NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHELLE GANZ,

          Plaintiff,

          v.

HOME DEPOT U.S.A. INC. et al.,

          Defendants.

Civil Action No. 17-6805 (MAS) (DEA)

**MEMORANDUM OPINION**

### SHIPP, District Judge

This matter comes before the Court upon Defendant Home Depot U.S.A. Inc.'s ("Defendant") Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] (ECF No. 42.) Plaintiff Michelle Ganz ("Plaintiff") opposed (ECF No. 45), and Defendant replied (ECF No. 49). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is granted.

---

[1] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## I.    BACKGROUND[2]

Plaintiff held various positions at a New Jersey Home Depot store from 2005 to 2016. (DSUMF ¶¶ 1–9.) In January of 2016, a customer approached Plaintiff, then a front end supervisor ("FES"), about another Home Depot employee Deborah Mammana ("Mammana"). (*Id.* ¶¶ 5, 8, 21.) The customer asked Plaintiff if Mammana was "crazy" and advised her that Mammana had "asked him several weeks ago to buy a $50 box in this football pool and ha[d] continued to harass him with texts and phone calls telling him that he needs to come in and pay for his box." (*Id.* ¶ 21.) Plaintiff informed the customer that she would speak with management. (*Id.* ¶ 22.)

---

[2] The background only includes undisputed facts on the record. The Court cites only to Defendant's Statement of Undisputed Material Facts ("DSUMF"). (ECF No. 42-1.)

At the outset, the Court must note several deficiencies in Plaintiff's opposition papers, particularly in Plaintiff's Response to Defendant's Statement of Material Facts ("PRSMF") (ECF No. 46-1). Rule 56.1 of the District of New Jersey's Local Civil Rules requires the opponent of summary judgment to furnish a responsive statement of material facts stating each material fact in dispute and "citing to the affidavits and other documents submitted in connection with [the] motion." Unsupported assertions cannot factor into the Court's summary judgment analysis. First, the PRSMF is often devoid of citations to the record. (*See, e.g.*, PRSMF ¶¶ 21–22, 33–35, 38, 42–44, 49, 53–65, 68–74, 96, 102, 115–17, 121–23, 131–39, 141, 143, 151–52.) In addition to unsupported assertions, arguments are made in the PRSMF as well. (*See, e.g.*, PRSMF ¶¶ 32, 44, 53, 76, 84, 87–88, 96, 116, 120, 141, 151.) The purpose of a statement of facts is not to provide legal arguments—for that is the purpose of a brief. *See, e.g.*, *Hoffmann-La Roche, Inc. v. Apotex, Inc.*, No. 07-4417, 2013 WL 323335, at \*3 (D.N.J. Jan. 25, 2013). Furthermore, "[j]udges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Separately, PRSMF identifies certain discovery that was unavailable to Plaintiff as allegedly suppressed by either the store manager or Home Depot. (*See, e.g.*, PRSMF ¶¶ 47, 76, 84.) First, fact discovery in this matter has been extended on numerous occasions. Initially set to close on September 14, 2018 (ECF No. 13), the date for the close of fact discovery was subsequently amended to November 14, 2018 (ECF No. 15), to December 14, 2018 (ECF No. 20), to January 31, 2019 (ECF No. 23), and finally to February 15, 2019 (ECF No. 29). Second, Plaintiff does not show by affidavit or declaration that she cannot present facts essential to justify her opposition, pursuant to Rule 56(d). For the reasons set forth above, the Court will, therefore, decide the motion, pursuant to Rule 56(e).

Thereafter, Plaintiff informed the assistant store manager ("ASM") about her conversation with the customer. (*Id.* ¶ 23.) She told the ASM that the customer approached her, complained about Mammana harassing him to be part of a Super Bowl pool, and said he was uncomfortable coming into the store. (*Id.* ¶ 24.) The ASM reported the customer's concern to Home Depot's Associate Advice and Counsel Group ("AACG"). (*Id.* ¶ 25.) On January 22, 2016, the AACG interviewed Mammana. (*Id.* ¶¶ 28, 75.) On January 24, 2016, the AACG interviewed Plaintiff and obtained a written statement from her as well. (*Id.* ¶ 27.) At the end of the investigation, the AACG recommended that Mammana receive a disciplinary notice for violating Home Depot's non-solicitation policy. (*Id.* ¶ 29.) The Store Manager thereafter issued Mammana a disciplinary notice. (*Id.* ¶ 30.)

Plaintiff alleges that after she complained to management about Mammana certain store employees, including her managers, retaliated against her and that she was forced to quit as a result of the hostile work environment. Mammana gave Plaintiff dirty looks whenever the two were together and occasionally mouthed the words "bitch" or rat" at Plaintiff. (*Id.* ¶¶ 76; 103-04.) On one occasion, Mammana slammed her shoulder into Plaintiff and continued to walk past her, while giggling and apologizing. (*Id.* ¶ 76.) Mammana submitted her resignation letter on May 9, 2016. (*Id.* ¶ 81.) A head cashier, Paula Schulthorpe, stared at Plaintiff. (*Id.* ¶ 107–08.) A cashier, Angelica Rivera, constantly gave Plaintiff dirty looks. (*Id.* ¶¶ 82–85, 111.) Another cashier, Barbara Pitarresi, gave Plaintiff dirty looks and did not have a friendly demeanor. (*Id.* ¶¶ 86–88.) A third cashier, Virginia Emmons, ignored and rolled her eyes at Plaintiff. (*Id.* ¶¶ 91-93.) Emmons also spoke rudely and in a "snotty" manner to Plaintiff. (*Id.* ¶ 106.) Department Supervisor Gene Murphy testified that, on several occasions, a group of associates bad-mouthed Plaintiff and, on one such occasion, a cashier referred to Plaintiff as "that bitch."

(*Id.* ¶¶ 97–102 (citing Murphy Dep. Tr., Ex. 24 to O'Connor Aff., ECF No. 42-6 at *45–54);[3] *see also* Murphy Assoc. Statement, Ex. E to Luttrell Cert., ECF No. 46 at *17–20; Murphy Notes, Ex. F to Luttrell Cert., ECF No. 46 at *21–24.)

On April 25, 2016, Plaintiff requested intermittent leave to care for her mother, which Home Depot granted. (*Id.* ¶¶ 153–54.) Plaintiff continued to work as a FES until May 15, 2016, when she voluntarily stepped down to care for her ailing mother. (*Id.* ¶¶ 8, 33–38.)

Plaintiff then worked as a Pro Account Sales Associate ("PASA") and received a lower hourly rate. (*Id.* ¶¶ 9, 39–49.) Because the company's hourly pay differential was set at $1.00 per pay band at the time, the regional human resources director reduced Plaintiff's hourly rate by $2.00. (*Id.* ¶¶ 44, 45.) Plaintiff requested her hourly rate be reduced only by $1.50 because the pay differential was set at $0.75 per pay band when Plaintiff was promoted to FES. (*See id.* ¶¶ 40, 44, 46.) Plaintiff later received a retroactive pay increase of $0.50 as she desired. (*See id.* ¶ 48.)

While Plaintiff worked as a PASA, several associates complained about her to management. (*See id.* ¶¶ 114–39.) In July of 2016, Schulthorpe alleged that Plaintiff once approached her, yelled at her, and called her a "disgusting human being." (*Id.* ¶¶ 120–23.) Schulthorpe complained to the ASM and provided an associate statement. (*See id.* ¶ 123.) Although requested, Plaintiff did not file an associate statement in response. (*Id.* ¶¶ 125–32.) Around the same time, several other store employees complained about Plaintiff. (*See id.* ¶¶ 114–19, 133–39.) The pro sales department supervisor, and Plaintiff's supervisor at the time, noted in an associate statement that Emmons felt "bullied" by a clique of employees that

---

[3] Page numbers preceded with an asterisk reference the page numbers at the top of the ECF filing.

4

included Plaintiff. (*Id.* ¶ 136.) Emmons, Rivera, and Pitarresi also provided associate statements complaining about Plaintiff's bullying behavior. (*Id.* ¶¶ 137–39.)

The AACG investigated the associates' concerns and recommended Plaintiff receive a disciplinary notice. (*Id.* ¶¶ 123, 140–41.) On August 4, 2016, the store manager issued Plaintiff a disciplinary notice. (*Id.* ¶ 142.) Plaintiff submitted a resignation letter in August of 2016 and stopped working on September 19, 2016. (*Id.* ¶¶ 1, 148.)

Plaintiff filed suit on September 6, 2017. Plaintiff alleges that she suffered workplace retaliation from January of 2016, when she complained to management about a co-employee's conduct, to September of 2016, when she resigned. She alleges that Defendant violated the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. §§ 34:19–1 to –8 (Count One); the New Jersey Family Leave Act ("FLA"), N.J. Stat. Ann. §§ 34:11b–1 to –16 (Count Two); and the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. §§ 10:5–1 to –49. Defendant moves for summary judgment on all counts.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, . . . interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c).

Although the movant bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the nonmoving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 250 (1986). The Court must grant summary judgment if the nonmoving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

The Court must consider all facts and their logical inferences in the light most favorable to the nonmoving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.  DISCUSSION

### A.  Count One: CEPA Violation

Under CEPA, it is unlawful for an employer to retaliate against an employee who "report[s] illegal or unethical workplace activities." *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003) (citation omitted). Because CEPA is "remedial legislation," it "should be construed liberally to effectuate its important social goal . . . to encourage, not thwart, legitimate employee complaints." *Id.* at 901 (internal quotation marks and citations omitted).

To prevail on a CEPA retaliation claim, a plaintiff must demonstrate that (1) she reasonably believed her co-employee's conduct was violating a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy, *Higgins v. Pascack Valley Hosp.*, 730 A.2d 327, 336, 338 (N.J. 1999) (citation omitted); (2) she performed a whistleblowing activity as defined in CEPA; (3) an adverse employment action was taken against her; and (4) a causal connection exists between the whistleblowing activity and the adverse employment action. *Caver v. City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005). When a plaintiff cannot establish any one of these elements, dismissal of the CEPA claim is appropriate. *See Hitesman v. Bridgeway, Inc.*, 93 A.3d 306, 318 (N.J. 2014).

Defendant argues that the record has no evidence of Home Depot taking any retaliatory action against Plaintiff. Plaintiff argues that store employees and her supervisors retaliated against her by demoting her, decreasing her pay, filing unfavorable performance reviews, and creating a hostile work environment. Specifically, she alleges the following conduct:

- Certain employees were "intimidating and disrespectful" towards her and that "the store manager refused to address" this behavior, including by suppressing another associate's statement;

- The store manager transferred her to the same desk area as the co-employee she complained about after she stepped down from her position as FES;

- Management refused to correct a wrongful pay decrease that happened after she stepped down from FES;

- After the wrongful pay decrease was corrected, the store manager "caused" certain coworkers who disliked her to submit Associate Statements to the AACG falsely accusing her of bullying them;

7

- After Plaintiff complained about her coworker's false allegations, the regional manager refused to listen and "instead pressed on the false allegations"; and

- As a result of the harassment and hostile work environment, Plaintiff was forced to resign "in lieu of being fired" when she discovered that her absences permitted under the Family Leave Act were reported as unexcused.

(Pl.'s Opp'n Br. at 2–3, ECF No. 45.)[4]

CEPA defines "retaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J. Stat. Ann. § 34:19–2(e). "A discharge encompasses not just an actual termination from an employment, but a constructive discharge. A constructive discharge occurs when an employer's conduct is so intolerable that a reasonable person would be forced to resign rather than continue to endure it." *Donelson v. DuPont Chambers Works*, 20 A.3d 384, 392 (N.J. 2011) (internal quotation marks and citation omitted).

"What constitutes an 'adverse employment action' must be viewed in light of the broad remedial purpose of CEPA . . . ." *Id.* An adverse employment action may include "making false accusations of misconduct, giving negative performance reviews, issuing an unwarranted suspension, and requiring pretextual mental-health evaluations." *Id.* An adverse employment action need not be "a single discrete action" but can be "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." *Green v. Jersey City Bd. of Educ.*, 828 A.2d 883, 891 (N.J. 2003).

---

[4] The Court notes that Plaintiff does not cite to either the DSUMF or PRSMF.

8

"A hostile work environment claim [may be] comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 622 (N.J. 2002) (citation omitted). A hostile work environment claim exists where "the complained-of conduct . . . [is] severe or pervasive enough to make [a] . . . reasonable [plaintiff] believe that . . . the conditions of employment are altered and the working environment is hostile or abusive." *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993); *see also Abbamont v. Piscataway Twp. Bd. Of Educ.*, 650 A.2d 958, 963 (N.J. 1994) (concluding that the analysis, principles, and standards of liability set forth under LAD in *Lehmann* are "fully applicable" to a CEPA action). "In determining whether an actionable hostile work environment claim exists, [the court] look[s] to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Shepherd*, 803 A.2d at 622 (internal quotation marks and citation omitted).

The Court first addresses Plaintiff's allegations of demotion, pay decrease, and unfavorable performance reviews. Here, the record does not show that Home Depot took any of these actions. Plaintiff voluntarily stepped down from the FES position to care for her ailing mother. (DSUMF ¶¶ 8, 33; PRSMF ¶¶ 8, 33.) Because she stepped down from FES to PASA, she received a reduced hourly rate, commensurate with the two-pay band differential. (*See* DSUMF ¶¶ 39, 44; PRSMF ¶¶ 39, 44.) To this point, Plaintiff argues that store management refused to correct a wrongful pay decrease that happened after she stepped down as FES. Although the record shows that Plaintiff disputed the decrease in her hourly wage, the record also demonstrates that Plaintiff ultimately received a retroactive pay increase of $0.50 per hour

after speaking with Home Depot's Director of Associate Relations. (DSUMF ¶ 46; PRSMF ¶ 46.) "[R]escinded employer action that makes plaintiff completely whole and remedies a prior decision cannot constitute an adverse employment action." *Beasley v. Passaic Cty.*, 873 A.2d 673, 685 (N.J. Super. Ct. App. Div. 2005) (citations omitted). Even if the $2.00 pay decrease was unjustified (which the Court finds unsupported in the record), Plaintiff would not be able to support a retaliation claim based on decreased pay because her hourly wage decreased a net amount of $1.50 as she requested.

Moreover, the record shows that the annual performance review Plaintiff received after reporting the Super Bowl pool complaint was not worse than the prior year's review. (DSUMF ¶ 65; PRSMF ¶ 65.) Plaintiff admitted as much during her deposition. (*See* Ganz Dep. Tr. at 249:5–8, Ex. 1 to O'Connor Aff., ECF No. 42-4.) Plaintiff also argues that the store manager "caused" certain colleagues to submit associate statements to the AACG and falsely accuse Plaintiff of bullying behavior. Plaintiff, however, does not set forth any facts to support this claim. Moreover, as Plaintiff understands, the AACG is responsible for investigating workplace misconduct and recommending disciplinary action. (Pl.'s Opp'n Br. at 2.)

The definition of retaliatory action "speaks in terms of completed action . . . . [It] does not encompass action taken to effectuate the discharge, suspension or demotion." *Keelan v. Bell Commc'ns Res.*, 674 A.2d 603, 607 (N.J. Super. Ct. App. Div. 1996) (internal quotation marks omitted). "[A]n investigation of an employee is not normally considered retaliation." *Beasley*, 873 A.2d at 684–85 (citation omitted). "It would require a strong showing to transmute [a] defense to the disciplinary charges into an affirmative CEPA claim." *Id.* (cleaned up). Here, the record shows that the AACG investigated the conduct alleged in the associate statements and ultimately concluded that Plaintiff should be disciplined. (*See* DSUMF ¶ 141; PRSMF ¶ 141.)

Plaintiff has not set forth facts that show the AACG's investigation was conducted improperly. Rather, she was offered—and did not take—the opportunity to respond. Plaintiff alleges that the regional manager refused to listen to her and "instead pressed on the [associates'] false allegations" but does not provide any support for this assertion. Because there are no facts to suggest that management directed associates to file statements against Plaintiff and because Plaintiff does not argue the AACG's investigation was improper, Plaintiff is unable to establish retaliation based on unfavorable performance reviews.

The record also does not show that the store manager ignored Plaintiff's complaints about her colleagues or otherwise failed to protect her from harassment. Plaintiff cites to her October 10, 2018 response to Interrogatory 14 as evidence that she complained to the store manager about her co-employees on at least four occasions. (*See* Ex. N to Luttrell Cert., ECF No. 46 at *72–74.) After Plaintiff's discovery response, however, many parties mentioned therein were deposed: Plaintiff on October 30, 2018; the store manager on January 15 and 28, 2019; the pro sales department supervisor on January 22, 2019; and the ASM on January 28, 2019. (*See* O'Connor Aff. ¶¶ 2, 3, 7, 14, 24, ECF No. 42-3.) Conclusory self-serving interrogatory responses cannot withstand a motion for summary judgment in the absence of additional support. *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012); *see also Prall v. Bocchini*, No. 10-1228, 2016 WL 1222263, at *6, *8 (D.N.J. Mar. 29, 2016) ("One self-serving piece of evidence supported only by another self-serving piece of evidence does not suffice to raise a genuine [dispute] of material fact."). Here, Plaintiff provides no support for the allegations she makes in her interrogatory response. The Court, accordingly, finds that there is no reasonable basis to infer that the store manager failed to address Plaintiff's complaints and protect her from harassment.

The final discrete retaliatory action Plaintiff alleges is that the store manager transferred her to the same desk area as the co-employee she complained about after she stepped down from FES. The Court similarly finds this allegation unsupported.

What remains for the Court to consider, then, is whether the remaining facts show Plaintiff was subjected to a hostile work environment. Here, a handful of associates would stare and be rude to Plaintiff. Mammana, up until the day she resigned, occasionally mouthed the words "bitch" or "rat" at Plaintiff. Considering the undisputed conduct on the record, the Court does not find the circumstances were severe or pervasive enough to have altered Plaintiff's conditions of employment in an important and material manner. The Court, accordingly, finds that there is no evidence to show any retaliatory action was taken against Plaintiff. Because Plaintiff cannot satisfy this prong of the CEPA prima facie case, the Court finds that Defendant's motion should be granted as to Count One.

### B.    Count Two: FLA Violation

Plaintiff does not oppose Defendant's motion as to her FLA count. (*See* Pl.'s Opp'n Br. at 3 ("After a thorough amount of discovery, the Plaintiff is hereby stipulating to the dismissal of [her] FLA claim").) Defendant's motion as to Count Two is, therefore, granted.

### C.    Count Three: LAD Violation

Defendant also moved for summary judgment on Plaintiff's LAD claim. Plaintiff argues that "[f]or the same policy reasons and facts set forth [in her CEPA argument]," her LAD claim should survive if her CEPA claim is dismissed. (Pl.'s Opp'n Br. at *8.)

To establish a prima facie hostile work environment claim under LAD, a plaintiff employee must show that the objectionable conduct would not have occurred but for the employee's membership in a protected class, and that the conduct was severe or pervasive

12

enough to make a reasonable person believe that the conditions of employment were altered and the working environment was hostile or abusive. *Lehmann*, 626 A.2d at 453–54. Here, Plaintiff does not allege she is a member of a protected class. (*See* Compl. at *7–8.) Plaintiff does not argue that either. (*See generally* Pl.'s Opp'n Br.) Moreover, the record does not contain evidence that Plaintiff was discriminated against because of a protected status. The Court, accordingly, grants Defendant's motion as to Plaintiff's LAD claim.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 42) is granted in part and denied in part. An order consistent with this Memorandum Opinion will be entered.

S/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**